**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

MELISSA W.,[1]                                )
                                              )
        *Plaintiff*,                          )
                                              )
        v.                                    )        Civil Action No. 3:23-cv-337-REP-SLS
                                              )
MARTIN O'MALLEY,                              )
Commissioner of the                           )
Social Security Administration,[2]            )
                                              )
        *Defendant*.                          )
_____ )

## REPORT AND RECOMMENDATION

        In this action, Plaintiff Melissa W. seeks review of the Commissioner of the Social Security

Administration's ("SSA") decision to deny her Title II application for disability insurance benefits.

This matter comes before the Court for a Report and Recommendation under 28 U.S.C. §

636(b)(1)(B) on cross-motions for summary judgment.  (ECF Nos. 10, 12.)  The motions have

been fully briefed, rendering this matter ripe for review.  (ECF Nos. 10, 11, 12, 13.)

        Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo*

hearing and new decision.  (Plaintiff's Brief in Support of a Motion for Summary Judgment (ECF

No. 11) ("Pl.'s Mem.") at 16.)  As the basis for such relief, Plaintiff argues that the Administrative

Law Judge ("ALJ") failed to explain why he deemed Plaintiff's subjective complaints inconsistent

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that federal courts refer to claimants by their first names and
last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting
Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to
continue this suit.  42 U.S.C. § 405(g).

with the record.  (Pl.'s Mem. at 1, 11-16.)  The Commissioner responds that the ALJ properly considered and analyzed Plaintiff's subjective complaints under applicable regulations and that the Court should decline Plaintiff's invitation to reweigh the evidence.  (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 12) ("Def.'s Mem.") at 12-16.)

For the reasons set forth below, the ALJ properly considered Plaintiff's subjective complaints in accordance with the regulations, and substantial evidence supports the ALJ's findings.  Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on August 12, 2020, alleging disability beginning on August 5, 2020.  (Administrative Record ("R.") at 15, 106, 278.)[3]  Plaintiff alleged that she suffered from arthritis, degenerative disc disease, sciatica problems, hearing loss, a dislocated hip, and an inability to feel her feet.  (R. at 278.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 106, 120, 127-30, 133-36.)  Plaintiff requested a hearing before an ALJ, and one was held on September 27, 2022.  (R. at 46-77, 137-38.)

On October 19, 2022, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Social Security Act ("the Act") from the alleged onset date through the date of the decision.  (R. at 15-29.)  On April 13, 2023, the SSA Appeals Council denied Plaintiff's request

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation.  The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with

3

the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work.  *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  *See* 20 C.F.R. § 404.1520(e).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *See id.* § 404.1520(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert.  *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434

F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support

for the Commissioner's decision and "whatever in the record fairly detracts from its weight."

*Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v.

N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing

court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d

at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings

are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing

court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

## III.  THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation

process.  (R. at 15-29.)  *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the

ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 5, 2020

(the alleged onset date).  (R. at 18.)  At step two, the ALJ determined Plaintiff suffered from the

following severe impairments:

> spine impairment (including lumbar and lumbosacral degenerative disc disease,
> disc protrusion, and facet arthropathy), left lower extremity lumbar radiculopathy,
> osteoarthritis of the left shoulder, impairment of the bilateral ankles and feet
> (including right ankle arthritis, bilateral foot and ankle pronation deformity),
> bilateral hearing impairment (sensorineural hearing loss with hearing aid prescribed
> and tinnitus), obesity, and bilateral lower extremity peripheral neuropathy[.]

(R. at 18.)  At step three, the ALJ determined that Plaintiff did not have an impairment, individually

or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (R. at 19-21.)

The ALJ then determined Plaintiff's RFC.  (R. at 19-22.)  Based on the evidence in the

record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined

in 20 C.F.R. § 404.1567(b) with the following limitations:

lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking up to 6 hours and sitting up to 6 hours in an 8-hour workday; additional limitations include only occasional pushing and/or pulling (including foot control operations) with the left lower extremity; only occasional overhead reaching with the left upper extremity; only occasional balancing as defined in the SCO (the Selected Characteristics of Occupations); only occasional climbing ramps or stairs, stooping, kneeling, crouching, crawling; no climbing ladders, ropes, or scaffolds; only occasional exposure to loud noise (term use is consistent with examples of loud noise in the SCO—specifically, a can manufacturing department, large earth-moving equipment, and heavy traffic), vibration, respiratory irritants (such as fumes, odors, dust, gases, poorly ventilated areas in concentrations higher than found in a typical household), or workplace hazards (including unprotected heights and dangerous machinery).

(R. at 21-22.)   The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 22.)

In arriving at the RFC, the ALJ considered Plaintiff's subjective complaints.  (R. at 22.) Plaintiff testified that she experiences pain throughout her body "all day, every day," including in her toes, ankles, feet, knees, hips, lower back, neck, arm, and shoulder.  (R. at 22.) Plaintiff attends physical therapy to relax her muscles, takes medication, uses cold packs to help with the pain, and rests often throughout the day.  (R. at 22.)  Plaintiff stated she could walk and sit for 15 to 20 minutes at a time, can lift 20 to 30 pounds, can raise her hands "only a little" above her head, and cannot reach to the side with her left arm.  (R. at 22.)  She testified to napping for four hours out of an eight-hour workday.  (R. at 22.)  Plaintiff lacks strength in her hands, uses a device to grab and pick things up, and uses a riding cart while shopping in stores.  (R. at 22.)  She can drive "but it is limited," and she experiences drowsiness and digestion issues as side-effects of her medication.  (R. at 22.)  Plaintiff reported being able to hear loud sounds but having difficulty with lower pitches.  (R. at 22.)

The ALJ then detailed Plaintiff's medical history from August 2020 through September 2022.  (R. at 22-25.)  In an August 2020 appointment with a neurosurgeon, Plaintiff reported completing physical therapy for back and left leg pain, feeling like she could not stand a long time, and leg numbness associated with walking and sitting.  (R. at 22.)  The neurosurgeon referred her for an MRI.  (R. at 23.)

Plaintiff followed-up with the neurosurgeon in October 2020.  (R. at 23.)  The MRI revealed "lumbosacral transitional anatomy with partial lumbarization of S1 and degenerative changes and small disc protrusions at L4-L5 and L5-S1."  (R. at 23 (internal record citations omitted).)  The neurosurgeon found no indication for any surgical intervention, did not recommend injection therapy, and referred Plaintiff to an orthopedist.  (R. at 23, 386.)

In December 2020, Plaintiff saw an orthopedic surgeon for complaints of left hip and leg pain and received a referral to a hip specialist.  (R. at 23, 381-85.)  In January 2021, Plaintiff saw another orthopedic surgeon for initial evaluation of left knee and hip pain.  (R. at 23, 375-80.)  The ALJ summarized the findings on physical examination and x-ray results as follows:

> There was tenderness to palpation over the lumbar spinous processes, left paraspinal muscles, and left sacroiliac joint.  [Plaintiff] had some tenderness over the left greater trochanter, decreased range of motion with forward flexion due to pain, mildly decreased lumbar extension, and pain with left-sided bending.  There was 4+/5 strength in the left knee.  An x-ray of the left hip showed minimal osteophyte formation along the inferior sacroiliac joints, facet arthropathy in the lower lumbar spine, and transitional vertebra at the lumbosacral junction.

(R. at 23.)  The orthopedic surgeon assessed Plaintiff with left lower extremity pain consistent with sciatica and prescribed oral steroids.  (R. at 23.)  In March 2021, Plaintiff was seen again for back, left leg, and left hip pain and received a referral to pain management.  (R. at 23, 370-74.)

In April 2021, a pain management specialist saw Plaintiff for complaints of left leg pain.  (R. at 23.)  Plaintiff exhibited "decreased sensation to light touch in the left lateral thigh and leg,

5/5 lumbar myotomes, mild tenderness to palpation of the paraspinal region at the lower lumbar, and pain with lumbar spine range of motion." (R. at 23, 425-29.) The specialist ordered an EMG study and discussed steroid injections. (R. at 23.) The EMG/nerve conduction study "showed no evidence of a left sciatic mononeuropathy, no evidence of left acute lumbosacral radiculopathy, and there appeared to be evidence of a generalized sensory length dependent peripheral neuropathy in the lower extremities based on bilateral prolongation of the sural sensory responses." (R. at 23, 455-60.) Plaintiff received a referral for trigger point injections of the left hip. (R. at 23.)

In May 2021, Plaintiff saw a podiatrist with complaints of right ankle pain. (R. at 24, 441-43.) An x-ray of the right ankle showed arthritis of the medial lateral gutters and an inferior heel spur. (R. at 24.) The podiatrist recommended that Plaintiff apply ice to her right ankle following vigorous activity such as dancing, take ibuprofen as needed for acute flareups, and consider wearing a lace-up ankle brace during increased weightbearing activities. (R. at 24, 441.)

Also in May 2021, Plaintiff reported to her primary care provider for tinnitus with intermittent balance issues. (R. at 23.) A hearing screening was normal to voice, and Plaintiff was referred to an ear, nose, and throat specialist for a full evaluation of hearing loss. (R. at 23.) Later audiometric testing showed moderately severe hearing loss, resulting in a referral for hearing aids. (R. at 23.)

Plaintiff reported to pain management in August 2021 for left shoulder pain and in September 2021 as a follow-up for back and left hip pain and continued complaints of left shoulder pain. (R. at 24, 653-66, 703-21.) An x-ray of the left shoulder showed mild acromioclavicular and moderate glenohumeral joint degenerative changes. (R. at 24.) She received a left greater trochanteric bursa injection and a referral to physical therapy. (R. at 24.) In October 2021, she attended an outpatient physical therapy evaluation for left shoulder pain. (R. at 24, 737-48.)

In February 2022, Plaintiff saw an orthopedist for a second opinion regarding her left shoulder pain.  (R. at 24, 483-85.)  The orthopedist recommended cortisone injections and physical therapy for osteoarthritis of the left glenohumeral joint.  (R. at 24.)  Plaintiff received a left shoulder intra-articular injection in March 2022 for left shoulder pain.  (R. at 24, 510-11.)

In May 2022, Plaintiff went to urgent care with complaints of left-hand pain.  (R. at 24, 751.)  An x-ray of the left hand showed mild osteoarthritis, and Plaintiff was prescribed oral steroids and Tylenol.  (R. at 24.)

Also in May 2022, Plaintiff was evaluated for chronic low back pain.  (R. at 24.)  The ALJ summarized this visit as follows:

> [Plaintiff] had a body mass index of 35.7, normal gait, mechanical low back pain with extension, the hips moved well without pain, intact motor for bilateral lower extremities, 1+ reflexes of the knees and ankles, with no focal neurological findings.  An x-ray of the lumbar spine showed multilevel degenerative changes of the lumbar spine worst at L4-L5 and L5-S1 with a minimal 2 mm anterolisthesis of L4 on L5.  [Plaintiff] was assessed with chronic low back pain, lumbar spondylosis, and no active lumbar radiculopathy with no surgical diagnosis to pursue.

(R. at 24, 568-99.)   Plaintiff received a referral to physical therapy and a prescription for medication.  (R. at 24.)

In June 2022, Plaintiff saw a pain management specialist regarding her left shoulder pain.  (R. at 24.)  "The left upper extremity ha[d] 3+/5 strength, pain with movement, pain on palpation, spasticity, and wasting."  (R. at 24.)  She was assessed with localized primary osteoarthritis of the shoulder and prescribed medication.  (R. at 25, 758-59.)  In a follow-up appointment that same month, Plaintiff reported pain reduction to zero out of 10, improved mobility, range of motion, and sleep patterns, and working as an aide.  (R. at 25, 762-64.)

In July 2022, Plaintiff rated her left shoulder pain as four to six out of 10.  (R. at 25, 767.)  She reported improved mobility, range of motion, and sleep and an ability to work as an aide and

attend school.  (R. at 25, 767.)  Her physical examination did not change from June 2022.  (R. at 25, 768.)  Plaintiff's medications were adjusted to address adverse digestive side effects.  (R. at 25, 768.)

In August 2022, Plaintiff reported improvements in left shoulder pain and being able to work as an aide.  (R. at 25, 802.)  She also reported upper back spasms and pain from a recent motor vehicle accident.  (R. at 25, 802.)  Her physical examination remained unchanged, and she was referred to physical therapy.  (R. at 25, 802-04.)  In September 2022, Plaintiff reported increased pain/spams with physical therapy and was instructed to take previously prescribed medication.  (R. at 25, 804.)

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms inconsistent with the medical evidence and other record evidence.  (R. at 25.)  The ALJ acknowledged positive findings, including "some tenderness to palpation, decreased range of motion in the lumbar spine," and decreased strength and sensation in the left extremities, but examinations were otherwise unremarkable, including "normal hearing, negative straight leg raise testing, normal gait, normal sensation, and 5/5 strength."  (R. at 25 (internal record citations omitted).)  The ALJ determined that Plaintiff's conditions were "relatively stable on medication" and required "minimal treatment," including medications, physical therapy, injections, and a referral for hearing aids.  (R. at 25.)  Plaintiff's conditions did not require surgical intervention or hospitalization.  (R. at 25.)

The ALJ then considered the medical opinions in accordance with the requirements of 20 C.F.R. § 404.1520c.  (R. at 22.)  A Disability Determination Services ("DDS") physician, William Rutherford, Jr., M.D., opined that Plaintiff could carry and lift 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours, and sit for six hours in an eight-hour workday.

(R. at 26, 107-11.)  Dr. Rutherford found Plaintiff limited to occasional climbing ramps, stairs, ladders, ropes, and scaffolds and frequent balancing, stooping, kneeling, crouching, and crawling. (R. at 26, 107-11.)  Another DDS physician affirmed these findings.  (R. at 26, 113-19.)

The ALJ found these opinions partially persuasive because they were "somewhat supported by and consistent with the medical evidence of record, specifically regarding [Plaintiff's] ability to lift/carry, stand/walk, sit, and climb ramps and stairs."  (R. at 26.)  However, the ALJ found that the medical evidence reflected a need for greater postural and environmental limitations because of her spinal, shoulder, joint, lower extremity, and hearing issues and obesity.  (R. at 26.)  The ALJ supported these conclusions with evidence from the record, including x-rays, EMG studies, and hearing assessments.  (R. at 26.)  Because of the multilevel degenerative changes of the lumbar spine, he found Plaintiff not capable of climbing ladders, ropes or scaffolds and limited her to occasional balancing, stooping, kneeling, crouching, crawling, and exposure to vibration and workplace hazards.  (R. at 26.)  Considering the record evidence regarding Plaintiff's left leg and hip pain and left shoulder pain, the ALJ limited Plaintiff to occasional pushing or pulling with the left lower extremity and occasional overhead reaching with the left upper extremity.  (R. at 26.) To further address Plaintiff's hearing loss and obesity, the ALJ limited Plaintiff's exposure to loud noises and respiratory irritants.  (R. at 26.)

At step four, the ALJ found Plaintiff able to perform her past relevant work as a receptionist, housekeeper cleaner, and medical records clerk.  (R. at 27-28.)  In the alternative, the ALJ found Plaintiff capable of performing other jobs that exist in significant numbers in the national economy based on her age, education, work experience, transferrable skills, and RFC, including a receptionist.  (R. at 28-29.)  The ALJ concluded that Plaintiff was not disabled from August 5, 2020 through October 19, 2022.  (R. at 29.)

## IV.    ANALYSIS

Plaintiff contends that the ALJ failed to explain why he discounted Plaintiff's subjective complaints or otherwise found them inconsistent with the record, thereby leaving the Court without an "accurate and logical bridge" to support the RFC determination.  (Pl.'s Mem. at 11.)  The record shows otherwise.  The ALJ evaluated Plaintiff's subjective complaints as required by applicable regulations and provided a clear path to his reasoning regarding Plaintiff's impairments and limitations.  In addition, substantial evidence supports the ALJ's RFC determination.

The regulations provide a two-step process for evaluating Plaintiff's subjective complaints. 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2016 WL 1119029.  First, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p).  Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.*  The ALJ must consider all available evidence in this determination, including objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of the symptoms, and medical opinions and statements from others. *Id.*  The claimant does not need to produce objective evidence to satisfy this second prong. *Id.*

Here, the ALJ followed the two-step process.  At the first prong, the ALJ found that Plaintiff's medically determinable impairments could lead to the alleged symptoms.  (R. at 25.) And at the second prong, the ALJ determined that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 25.)

The ALJ acknowledged Plaintiff's impairments and provided a detailed summary of the medical record and treatment plan.  After analyzing the medical record, the ALJ concluded that Plaintiff's conditions were "relatively stable on medication, have required minimal treatment, and findings on examinations have been unremarkable."  (R. at 25.)  The ALJ supported this conclusion by summarizing Plaintiff's treatment, which consisted of prescription medication, referral to physical therapy, and injections, and did not include surgical intervention or hospitalization.  (R. at 25.)  The ALJ acknowledged positive findings on examination regarding the lumbar spine and left lower and upper extremities but summarized otherwise normal examination findings.  (R. at 25.)  The ALJ then considered medical opinion evidence, explaining why the ALJ found the standing, sitting, walking, lifting, and carrying limitations persuasive and detailing the reasons (with citations to the record) for including greater postural and environmental limitations than those recommended by the DDS physicians.  (R. at 26.)  In so doing, the ALJ complied with applicable regulations, provided sufficient explanation to allow meaningful review, and supported the RFC with substantial evidence.   And unlike the ALJ decision at issue in *Brown v. Commissioner of Social Security Administration*, the ALJ's reasoning here provides an "'accurate and logical bridge' from the evidence to the ALJ's conclusion."  873 F.3d 251, 269-70 (4th Cir. 2017).

In asserting otherwise, Plaintiff contends that the ALJ mischaracterized the record evidence by describing examinations as "unremarkable" but then acknowledging findings that "are highly significant and supportive of disability."  (Pl.'s Mem. at 12; *see id.* ("An ALJ fails to build the requisite logical bridge when he mischaracterizes the evidence of record." (citing *Jacob G. o/b/o*

*G. G. v. Berryhill*, No. 7:18-cv-15, 2019 WL 1571286, at *7 (W.D. Va. Feb. 26, 2019), *report and recommendation adopted* 2019 WL 1290895 (W.D. Va. Mar. 20, 2019)))).)   The record shows otherwise.  The ALJ acknowledged positive findings regarding Plaintiff's lumbar spine and left extremities and explained how the RFC accounts for those resulting limitations.  (R. at 25-26.) The ALJ then pointed out that other findings on examination where generally unremarkable,[4] thus supporting his conclusion that Plaintiff has the RFC to perform light work with additional postural and environmental limitations.  (R. at 25-26.)   This does not serve as an example of a mischaracterization of the record evidence.

Plaintiff also takes issue with the ALJ's conclusion that her conditions required "minimal treatment," labeling this as another mischaracterization of the record.  (Pl.'s Mem. at 14-15.)  The ALJ did not mischaracterize Plaintiff's treatment.  Instead, he provided a detailed analysis of Plaintiff's medical history from August 2020 through September 2022, covering assessments and treatment related to her lower back pain, left knee, leg and hip pain, right ankle pain, left shoulder and hand pain, and hearing issues.  (R. at 22-25.)  The ALJ considered the treatment Plaintiff received for each condition over the relevant time frame, including steroids, prescription medicine, physical therapy, injections, and a referral for hearing aids.  (R. at 25.)  The ALJ noted that Plaintiff's condition did not require surgical intervention or hospitalization.  With these explanations, the ALJ provided a logical bridge connecting the evidence to his conclusion that Plaintiff's conditions required minimal treatment.

---

[4] Within the records analyzed by the ALJ, doctors reported that Plaintiff had intact touch sensation (R. at 377); negative straight leg raise (R. at 377, 428, 575); normal and painless ranges of motion (R. at 429); intact motor movements for bilateral lower extremities (R. at 575); 5/5 external and internal strength on rotation (R. at 484);  no tenderness in her left shoulder (R. at 484); full muscle strength in all muscle groups (R. at 442); normal gait (R. at 442, 575); normal sensory levels (R. at 575); and normal hearing (R. at 463).

Plaintiff next refers to various portions of the record which she contends support her subjective complaints. (Pl.'s Mem. at 12-14.) The ALJ, however, considered these records, along with others, in making the RFC determination.[5]  While Plaintiff disagrees with how the ALJ analyzed and weighed the record evidence, the Court must refrain from reweighing conflicting evidence or substituting its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274. The ALJ followed the regulations in reaching the RFC determination and provided a sufficient level of information for the Court to trace his reasoning. Because substantial evidence supports the RFC determination, the Court finds no error.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right**

---

[5] *Compare* Pl.'s Mem. 12-14 (citing R. at 363, 372, 383-84, 397, 428, 443, 459, 566, 677, 742-43, 759, 768, 803) *with* R. at 23-26 (citing R. at 361-64 (Exhibit B1F/4-7), 370-86 (Exhibit B2F/3-19), 388-89 (Exhibit B2F/21-22), 425-29 (Exhibit B4F/3-7), 441-443 (Exhibit B5F/7-9), 455-60 (Exhibit B6F/3-8), 462-68 (Exhibit B7F/2-8), 472-75 (Exhibit B8F/4-7), 484-85 (Exhibit B9F/9-10), 510-11 (Exhibit B10F/19-20), 568-99 (Exhibit B13F/16-47), 646-51 (Exhibit B13F/94-99), 653-66 (Exhibit B13F/101-14), 703-21 (Exhibit B13F/151-69), 737-48 (Exhibit B13F/185-96), 751 (Exhibit B14F/2), 757-74 (Exhibits B16F, B17F, B18F, B19F), 784 (Exhibit B21F/7), 802-04 (Exhibit B22F/9-11)).

**to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

           /s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: June 28, 2024

16